**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANDERSON FORREST,<br><br>    Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES, LLC, and DISCOVER BANK,<br><br>    Defendants. | Case No.:<br><br>**COMPLAINT AND**<br>**DEMAND FOR JURY TRIAL**<br><br>    1.  **FCRA, 15 U.S.C. § 1681** *et seq.* |

Plaintiff ANDERSON FORREST ("Plaintiff") through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendant EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian"), Defendant EQUIFAX INFORMATION SERVICES, LLC ("Equifax"), and Defendant DISCOVER BANK ("Discover") (collectively, "Defendants").

## INTRODUCTION

1. Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by Defendants.

2. Plaintiff alleges that Defendants Experian and Equifax (collectively, the "CRA Defendants") reported inaccurate post-bankruptcy information, failed to maintain reasonable procedures to ensure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and failed to investigate and correct disputed information, in violation of 15 U.S.C. §§ 1681e(b) and 1681i.

1

3. Plaintiff further alleges that Discover failed to investigate and correct disputed information, in violation of 15 U.S.C. § 1681s-2(b).

4. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

7. Plaintiff Anderson Forrest ("Plaintiff") is a natural person who resides in Berks County, Pennsylvania.

8. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

9. Defendant Experian Information Solutions, Inc. ("Experian") is one of the largest credit reporting agencies in the United States and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

10. Experian is a corporation with its headquarters located in Costa Mesa, California.

11. Defendant Equifax Information Services, LLC ("Equifax") is one of the largest credit reporting agencies in the United States and is engaged in the business of assembling and

disseminating credit reports concerning hundreds of millions of consumers.  Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

12. Equifax's principal place of business is located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309.

13. Defendant Discover Bank ("Discover") is a major credit card company with its registered office at CT Corporation System, 28 Liberty Street, New York, New York 10005.

## FACTUAL BACKGROUND

14. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

15. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

16. The FCRA is intended to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

17. Experian and Equifax, two of the three major consumer reporting agencies (collectively, the "CRA Defendants") in the United States, regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports.

18.     CRA Defendants regularly obtain consumer bankruptcy information to include in consumer reports.

19.     CRA Defendants regularly seek out and procure public record information, including consumer bankruptcy filing and discharge information, with the intention of including this bankruptcy information on the consumer reports they sell to third parties such as lenders.

20.     The diligence CRA Defendants exercise in uncovering and recording consumer bankruptcy filings is not replicated in their subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

21.     CRA Defendants' unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by 15 U.S.C. § 1681e(b).

22.     CRA Defendants know, or should have known, the information they report about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in its own files.

23.     The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Equifax and Experian) to make lending decisions.

24.     A consumer who has obtained a bankruptcy discharge and has an account reporting with outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting with a zero-dollar balance.

25.     Despite the availability of accurate consumer information, CRA Defendants regularly report inaccurate information about accounts after consumers receive a Discharge Order.

26.     CRA Defendants regularly publish consumer information that conflicts with information: provided by data furnishers to Defendants, already included in their credit files,

4

contained in public records that they regularly access, or sourced through their independent and voluntary efforts.

27.     Defendants also know that failing to report the effect of a discharge on consumer account tradelines, while reflecting a bankruptcy on a credit report, would reasonably be understood to communicate to the world that the consumer had been in bankruptcy but had not received a discharge of a particular account. This not only inaccurately/incorrectly reflects an outstanding debt, but also would reasonably suggest to a consumer and those reviewing the consumer's credit report that the consumer was guilty of a bad act for which he or she did not deserve a discharge of a particular debt.[1]

28.     Consumers have filed countless lawsuits and complaints with the FTC and Consumer Financial Protection Bureau against Defendants for their inaccurate credit reporting following a Chapter 7 discharge.

29.     Thus, Defendants have been on continued notice of their inadequate post-bankruptcy reporting procedures. More specifically, Defendants are on continued notice that their inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

<u>*Allegations Specific to Credit Reporting of Plaintiff*</u>

30.     Plaintiff filed a Chapter 7 Bankruptcy in November of 2024, in the United States Bankruptcy Court in the Eastern District of Pennsylvania, including his account with Discover.

31.     Plaintiff received an Order of Discharge on August 29, 2025.

---

[1] Indeed, a bankruptcy discharge is for the "honest but unfortunate debtor," *Grogan v. Garner*, 498 U.S. 279, 287 (1991), and will not be provided to someone who filed bankruptcy in bad faith, failed to report assets, fraudulently transferred assets, engaged in reprehensible pre-bankruptcy conduct such as fraud, defalcation or embezzlement, or caused willful and malicious injury. 11 U.S.C. §§ 727(a), 523(a).

32.     The Discover account was a pre-petition debt for which Plaintiff's personal liability was eliminated upon entry of the Discharge Order.

33.     Upon discharge, the Discover Account was required to be reported with a zero-dollar balance and a status reflecting no personal liability.

34.     CRA Defendants prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 7 Bankruptcy.

35.     Defendants obtained notice of Plaintiff's bankruptcy discharge through their routine, independent collection of consumer information from third party vendors such as LexisNexis, as well as from furnishers that provide data regarding the individual tradelines reported by the CRAs in Plaintiff's consumer reports.

36.     Defendants are aware that they are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

37.     Defendants should have reported **all** of Plaintiff's dischargeable, pre-petition debts as included in or discharged in Chapter 7 Bankruptcy, and/or with a zero-dollar balance.

38.     Defendants failed to report **all** of Plaintiff's dischargeable, pre-petition debts as included in or discharged in Chapter 7 bankruptcy with a zero-dollar balance.

39.     Despite the discharge, CRA Defendants continued reporting the Discover account (the "Account") as open with a balance of $54,520 and a past due amount of $52,400.

40.     Accordingly, on countless occasions, including most recently in or around February of 2026, Plaintiff sent disputes regarding the Account to Experian and Equifax, asserting that the

Account was inaccurate, explaining that the debt was no longer personally enforceable due to the bankruptcy discharge, and requesting that this information be removed and/or corrected.

41.     Upon information and belief, Discover was notified of Plaintiff's disputes.

42.     Following receipt of Plaintiff's disputes, Experian failed to conduct a reasonable investigation, correct or remove the inaccurate Account from the Plaintiff's credit file. Instead, that information is still being reported to this day.

43.     Upon information and belief, Experian had all the information they needed to locate, investigate, and correct this inaccurate information, but failed to do so.

44.     Similarly, Equifax refused to investigate, correct or remove the Account from the Plaintiff's credit file.  Instead, Equifax purported to have verified this information as accurate and as a result, that information is still being reported to this day.

45.     Upon information and belief, Equifax had all the information they needed to locate, investigate, and correct this inaccurate information, but failed to do so.

46.     At all times pertinent hereto, Defendants' violations of the FCRA were willful, and carried out in reckless disregard for Plaintiff's rights as set forth under 15 U.S.C. §§ 1681e(b), 1681i and 1681s-2.

47.     Accordingly, Plaintiff is entitled to statutory, actual, and punitive damages under 15 U.S.C. § 1681n.

48.     Additionally, Defendants' violations of the FCRA were negligent. Accordingly, Plaintiff is entitled to statutory and actual damages under 15 U.S.C. § 1681o.

49.     In any event, Defendants are liable for Plaintiff's reasonable attorneys' fees and costs, pursuant to 15 U.S.C. §§ 1681n and 1681o.

50.    As a direct and proximate result of Defendants' willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed in his daily life, by the impact that this derogatory information has had on his credit score and the reputational harm that Plaintiff has suffered as a result of having this negative information attributed to him and disseminated to creditors. For example, Plaintiff has been denied credit opportunities due to these derogatory inaccuracies.

51.    The inaccurate reporting on Plaintiff's credit report has caused and continues to cause significant harm in Plaintiff's daily life. Plaintiff relies on the accuracy of his credit reports to obtain credit and housing. Because of Defendants' inaccurate reporting, Plaintiff's credit score has been unfairly lowered, resulting in denials of credit and difficulty obtaining financial products that would otherwise have been available. The false derogatory information also undermines Plaintiff's reputation for financial responsibility and subjects Plaintiff to embarrassment and frustration each time his credit is reviewed or discussed with potential lenders.

52.    Beyond financial consequences, the inaccurate reporting has caused Plaintiff substantial emotional distress, anxiety, and inconvenience. Plaintiff has spent considerable time and effort disputing the false information with credit reporting agencies and creditors, monitoring his credit, and attempting to mitigate the ongoing damage. Each time Plaintiff applies for credit or a loan, the inaccurate information resurfaces and creates uncertainty about his financial future. The continued presence of false negative data on Plaintiff's report has caused Plaintiff to lose confidence in the fairness of the credit system and to suffer tangible harm to his personal and professional life.

53.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, humiliation, stress, anger, frustration, shock, embarrassment, reputational harm, violation of privacy, and anxiety.

54. Defendants' conduct exacerbated Plaintiff's frustration during the already stressful post-bankruptcy period by hindering Plaintiff's ability to rebuild Plaintiff's credit.

## COUNT I
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681i
## AGAINST EXPERIAN

55. Plaintiff repeats and realleges the foregoing allegations in paragraphs 1-54 as if fully set forth herein.

56. At all times pertinent hereto, Experian was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(f).

57. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

58. On numerous occasions, including in or around February of 2025, Plaintiff initiated a written dispute with Experian requesting that they correct specific items in his credit file that were patently inaccurate and damaging to him, namely the damaging Discover Account.

59. Upon information and belief, Experian received Plaintiff's disputes.

60. Experian, having either conducted no investigation or failed to conduct a reasonable investigation, continued to report this inaccurate Account on Plaintiff's credit file, something that any basic investigation would have prevented.

61. As a direct and proximate result of Experian's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed, as explained above.

## COUNT II
## FAILURE TO ASSURE MAXIMUM POSSIBLE ACCURACY

**15 U.S.C. § 1681e(b)**
**AGAINST EXPERIAN**

62. Plaintiff repeats and realleges the foregoing allegations in paragraphs 1-54 as if fully set forth herein.

63. Section 1681e(b) of the FCRA requires that, "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

64. Were Experian to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have removed or corrected the inaccurate Discover Account information being reported on the Plaintiff's credit report, especially where a basic investigation of the Plaintiff's disputes would have corroborated the inaccuracy.

65. As a direct and proximate result of Experian's willful and/or negligent failure to follow procedures to assure maximum possible accuracy of the information it reports, Plaintiff has been harmed, as explained above.

**COUNT III**
**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681i**
**AGAINST EQUIFAX**

66. Plaintiff repeats and realleges the foregoing allegations in paragraphs 1-54 as if fully set forth herein.

67. At all times pertinent hereto, Equifax was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(f).

68. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

10

69.     On numerous occasions, including in or around February of 2025, Plaintiff initiated a written dispute with Equifax requesting that they correct specific items in his credit file that were patently inaccurate and damaging to him, namely the damaging Discover Account.

70.     Upon information and belief, Equifax received Plaintiff's disputes.

71.     Equifax, having either conducted no investigation or failed to conduct a reasonable investigation, continued to report the inaccurate Discover Account information on the Plaintiff's credit file, something that any basic investigation would have prevented.

72.     As a direct and proximate result of Equifax's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed, as explained above.

## COUNT IV
## FAILURE TO ASSURE MAXIMUM POSSIBLE ACCURACY
## 15 U.S.C. § 1681e(b)
## AGAINST EQUIFAX

73.     Plaintiff repeats and realleges the foregoing allegations in paragraphs 1-54 as if fully set forth herein.

74.     Section 1681e(b) of the FCRA requires that, "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

75.     Were Equifax to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have removed or corrected the inaccurate Discover Account information being reported on the Plaintiff's credit report, especially where a basic investigation of the Plaintiff's dispute would have corroborated the inaccuracy.

76.     As a direct and proximate result of Equifax's willful and/or negligent failure to follow procedures to assure maximum possible accuracy of the information it reports, Plaintiff has been harmed, as explained above.

11

## COUNT V
## FAILURE TO INVESTIGATE DISPUTE
### 15 USC § 1681s-2(b)
### AGAINST DISCOVER

77.    Plaintiff repeats and realleges the foregoing allegations in paragraphs 1-54 as if fully set forth herein.

78.    Furnishers of credit information have a duty under the FCRA to investigate disputes from consumers as to the accuracy of information being reported.

79.    On numerous occasions, including in or around February of 2025, Plaintiff initiated disputes with the credit bureaus disputing the accuracy of the account being reported by Discover.

80.    Upon information and belief, Discover received notice of these disputes from the credit bureaus.

81.    Discover was obligated, pursuant to section 1681s-2(b) of the FCRA to conduct a complete and thorough investigation with respect to Plaintiff's dispute.

82.    Even after Plaintiff properly disputed the Account with the credit reporting agencies, Discover refused to conduct a reasonable investigation and continued inaccurately reporting the Account on Plaintiff's credit report.

83.    Discover's conduct violated section 1681s-2(b) of the FCRA.

84.    As a result of Discover's conduct, Plaintiff was harmed, as discussed above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendants for the following:

(a)    Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. § 1681 *et seq.*;

(b)    An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c)    An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

12

(d)     An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. §
        1681n(a)(2);

(e)     Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and §
        1681o(a)(2); and

(f)     Such other and further relief as this Honorable Court may deem just and proper,
        including any applicable pre-judgment and post-judgment interest, and/or declaratory
        relief.

## **JURY DEMAND**

Plaintiff hereby demands a jury trial on all issues so triable.

Dated: April 10, 2026

/s/ Ari Marcus
Ari Marcus, Esq.
MARCUS & ZELMAN, LLC
701 Cookman Avenue, Suite 300
Asbury Park, NJ 07712
(732) 695-3282
ari@marcuszelman.com
Attorneys for Plaintiff